UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAVALIER D. KNIGHT<br><br>Plaintiff,<br><br>- against -<br><br>NEW YORK CITY, *et al*.<br><br>Defendants. | **1:22-cv-10755 (VEC) (VF)**<br><br>**LETTER NO. 05**<br><br>**OBJECTION TO [40]<br>REPORT & RECOMMENDATION** |

Honorable JUDGE VALERIE E. CAPRONI, United States District Judge:

**1)** ___*NY State Rifle & Pistol Ass'n Inc. v. Bruen*___, 142 S. Ct. 2111 (2022)

    **(a)**   **JUSTICE Thomas:** The constitutional right to bear arms in public for self-defense is not "<u>a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.</u>" <u>We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need</u>. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. <u>And it is not how the Second Amendment works when it comes to public carry for self-defense</u>…

    **(b)**   **JUSTICE Alito concurring:** … Much of the dissent seems designed to obscure the specific question that the Court has decided, and therefore it may be helpful to provide a summary of what we have actually held… today's decision … holds that <u>a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>. **Ex 01**

    **(a)**   **Stare Decisis:** When a court faces a legal argument, if a previous court has ruled on the same or a closely related issue, then the court will make their decision in alignment with the previous court's decision. The previous deciding court must have binding authority over the court; otherwise, the previous decision is merely persuasive authority. In ___Kimble v. Marvel Enterprises___, the U.S. Supreme Court described the rationale behind stare decisis as "promot[ing] the evenhanded, predictable, and consistent development of legal principles, foster[ing] reliance on judicial decisions, and contribut[ing] to the actual and perceived integrity of the judicial process." **Ex 02**

## 2)   <u>Discretionary Licensing is Unconstitutional</u>

**1.**   "<u>A State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>." *Bruen* prohibits issuing a state Residence Premise License (state RPL) that "<u>effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>."

> **(a)**   **Justice Thomas:** In keeping with <u>*Heller*</u>, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

**2.**   <u>*Bruen*</u> held that citizens cannot be prohibited from publicly <u>carrying</u> arms for self-defense. Defendants are issuing a state RPL which is a "<u>restricted type of license</u>" that "<u>effectively prevents law-abiding residents from carrying a gun for [self-defense]</u>." Defendants cannot promulgate regulations that ignore the precedent in <u>*Bruen*</u> and continue to issue a state RPL that <u>as-applied and facially</u> violates the 2nd Amendment. Under step (1) of <u>*Bruen*</u> Knight's conduct is presumptively protected by the plain text of the 2nd Amendment. Knight's conduct cannot be severed from the protection of the 2nd Amendment by judicial fiat at step (1) to avoid step (2) of <u>*Bruen*</u>.

> **(1)**   **<u>The Supremacy Clause</u>**

> **(a)**   This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

3.      Knight intends to cancel his state RPL and transfer the (4) handguns on his state RPL to his state Carry License (state CL) but 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits transferring more than (2) handguns to a state CL. If Knight were to cancel his state RPL the (2) remaining handguns would be confiscated by the NYPD License Division (NYPD LD) to be destroyed. This constitutes a taking of Knight's personal property without just compensation in violation of due process. Knight only requires a state CL and asks this court why is he prohibited from canceling his state RPL, transferring all (4) of his handguns to his state CL, and adding any new handguns he intends to <u>acquire, possess, and carry</u> in the future to his state CL.

4.      Step (2) of <u>*Bruen*</u> requires Defendants to provide historical analogues to support the regulations of 38 - R.C.N.Y. § 5-25 which allows the issuance of a state RPL that prohibits the <u>carrying</u> of any arms and a state CL that prohibits the <u>acquisition, possession, and carrying</u> of more than (2) handguns. At step (1) of <u>*Bruen*</u> the plain text of the 2nd Amendment presumptively protects Knight's conduct in the <u>acquisition, possession, and carrying</u> of handguns publicly for self-defense. Knight's 2nd Amendment right to keep and bear arms is a pre-existing right that cannot be granted or taken away by Defendants issuing or canceling a state license.

3)      <u>**Knight Fails to State a Claim Under the 2nd Amendment**</u>

(a)    **R&R:** Knight contends that 38 RCNY § 5-25(d)(4)(i) violates the Second Amendment of the United States Constitution and the New York State Civil Rights Law § 4. <u>See</u> Compl. Fifth Cause of Action. Knight alleges that the city regulation restricts and substantially burdens an individual's right to keep and bear arms and is thus unconstitutional on its face and as applied to Knight and other law-abiding citizens. *Id*. ¶¶ 53-55. As explained below, Knight has not pled a plausible violation of federal or state law. **Ex 03 p. 8 ¶ 3**

**5.**     A state RPL prohibits the <u>carrying</u> of arms and a state CL prohibits the <u>acquisition, possession, and carrying</u> of more than (2) handguns in violation of the right to <u>keep and bear</u> arms. Both licenses prohibit conduct presumptively protected by the plain text of the 2nd Amendment. Defendants are subjecting Knight to the deprivation of his rights, privileges, and immunities secured by the Constitution and laws, and shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Knight has pleaded multiple plausible violations of 42 - U.S.C. § 1983 the 2nd Amendment, and the 14th Amendment.

**(2)     <u>42 - U.S.C. § 1983 - Civil Action for Deprivation of Rights</u>**

**(a)**     Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,

**(3)     <u>AMENDMENT XIV Section 1</u>**

**(a)**     No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**6.**     Whereas "<u>a State may not enforce a law, like New York's Sullivan Law, that effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>" This court avers that Defendants can enforce 38 - R.C.N.Y. § 5-25 (d)(4)(i) and continue issuing a state RPL that "<u>effectively prohibits its law-abiding residents from carrying a gun for self-defense</u>" which <u>as-applied and facially</u> violates the 2nd Amendment right to keep and bear arms.

**(4)** <u>**NY Civil Rights Law § 4**</u>

    **(a)**    A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed.

**(5)** <u>**Second Amendment**</u>

    **(a)**    A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

**7.**    NY Civil Rights Law § 4 states "The right of the people to <u>keep and bear</u> arms <u>cannot be infringed</u>." And the 2nd Amendment states that "The right of the people to <u>keep and bear</u> Arms, <u>shall not be infringed</u>." However, neither states that "the right of the people to <u>keep **(OR)** bear</u> arms <u>shall not be infringed</u>."

    **(a)**    **Justice Thomas:** Applying that new and more stringent standard to the New York proper-cause requirement, <u>Justice Thomas found that the challengers' desire to carry a handgun in public for self-defense fell squarely within the conduct protected by the 2nd Amendment. The amendment's text does not distinguish between gun rights in the home and gun rights in public places</u>, Thomas observed. Indeed, he suggested, <u>the 2nd Amendment's reference to the right to "bear" arms most naturally refers to the right to carry a gun outside the home</u>.

**8.**    <u>"The amendment's text does not distinguish between gun rights in the home and gun rights in public places."</u> *Murdock v. Pennsylvania* prohibits Defendants from converting a liberty into (2) licenses, and charging (2) fees, by splitting the 2nd Amendment right into (1) state RPL to <u>keep arms</u> and (2) a separate but not equal state CL to <u>bear arms</u> that is <u>as-applied and facially</u> unconstitutional.

**(6)** <u>**Murdock v. Pennsylvania**</u>

**(a)**    "No state shall convert a liberty into a license, and charge a fee, therefore." *See*, <u>*Murdock v. Pennsylvania*</u>, 319 U.S. 105 (1943). **Ex 04**

**4)**   **Defendants Ignore Step (1) of Bruen to Avoid Losing at Step (2)**

**(a)**   **R&R:** Although Knight contends that there is no "<u>need for two licenses</u>" (see 11/13/23 Tr. at 19-20, 36-39, 46-47, 54-55), <u>nothing in *Bruen, Heller,* or *McDonald* prevent the City from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public,</u> so long as the licensing regime does not allow for the denial of a license "based on a perceived lack of need or suitability." *Bruen*, 142 S. Ct. at 2123. And, here, the challenged rule does not even impose a license requirement or pertain to the requirements for issuance of a carry or residence license. **Ex 03 - p. 12 ¶ 1**

**9.**   This court avered "<u>nothing in *Bruen, Heller,* or *McDonald* prevent the City from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public.</u>" However this is prohibited by both *Heller* and *Bruen*. **Ex 05**

**(a)**   **Justice Thomas:** We have little difficulty concluding that it does. <u>Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms.</u> As we explained in *Heller*, the "textual elements" of the Second Amendment's operative clause— "the right of the people to keep and bear Arms, shall not be infringed"—"guarantee the individual right to possess and carry weapons in case of confrontation."

**(b)**   This definition of "bear" naturally encompasses public carry. Most gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table. Although individuals often "keep" firearms in their home, at the ready for self-defense, most do not "bear" (i.e., carry) them in the home beyond moments of actual confrontation. <u>To confine the right to "bear" arms to the home would nullify half of the Second Amendment's operative protections.</u>

**10.**   Justice Thomas concurred that "<u>to confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections.</u>" A state RPL is a "<u>restricted type of license</u>" that "<u>confines the right to 'bear' arms to the home nullifying half of the 2nd Amendment's operative protections.</u>" A state RPL prohibits the <u>bearing</u> of any handguns on that license at any time, for any reason, whatsoever <u>as-applied, and facially</u> strikes at the core of the 2nd Amendment right.

**(7)**   **A State Residence Premise License is Unconstitutional**

**(a)**   This is a <u>restricted type of license</u>. It is issued for your residence or business. <u>The Licensee may possess a handgun ONLY on the premises of the address indicated on the front of the license</u>. Licensees may also transport their handguns and ammunition in separate locked containers, directly to and from an authorized range or hunting location. (For hunting, an endorsement from NYPD License Division is required, in addition to a New York State hunting license). Handguns must be unloaded while being transported. **Ex 06**

**11.**   Whereas, "<u>to confine the right to 'bear' arms to the home would nullify half of the Second Amendment's operative protections</u>." Defendants continue to issue state RPLs fully aware that this is a "<u>restricted type of license</u>" that "<u>confines the right to bear arms to the home</u>" and "<u>effectively prevents law-abiding residents from carrying a gun for [self-defense]</u>" which <u>as-applied and facially</u> violates the 2nd Amendment. *Bruen* held that "<u>a State may not enforce a law, that effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>.

**12.**   A state RPL is a "<u>restricted type of license</u>" issued by Defendants "<u>that effectively prevents its law-abiding residents from carrying a gun for [self-defense]</u>" which is <u>as-applied and facially</u> unconstitutional. Under the Supremacy Clause, state RPLs must be enjoined and state CLs must allow for the keeping and bearing of all handguns <u>acquired and possessed</u> to be publicly carried by all citizens.

**13.**   How can the NYPD LD falsely aver on the record that their rules don't regulate the <u>acquisition</u> of handguns? <u>Acquiring</u> handguns to <u>carry</u> publicly is conduct presumptively protected by the plain text of the 2nd Amendment. Even if Defendants could "<u>require gun owners to obtain multiple licenses, one for the home and one to carry publicly</u>" they still require historical analogues at step (2) of *Bruen*.

14.     Under *Bruen*, there is no right to keep and bear arms in the home separate from publicly <u>carrying</u> handguns for self-defense. Defendants aver that 38 - R.C.N.Y. § 5-25 (d)(4)(i) does not regulate the <u>acquisition, possession, or carrying</u> of handguns however this is false. Under 38 - R.C.N.Y. § 5-25 (d)(4)(i) a state CL only allows for the <u>acquisition and possession</u> of a total of (2) handguns and prohibits the <u>acquisition</u> of any additional handguns into <u>perpetuity</u>.

15.     <u>Acquiring</u> handguns to <u>carry</u> publicly is conduct presumptively protected by the plain text of the 2ⁿᵈ Amendment which does not limit the right to keep and bear arms to only <u>acquiring, possessing, and carrying</u> (2). This type of judicial decision would require a "<u>judge-empowering 'interest-balancing inquiry.</u>'"

### (8)     <u>Interest Balancing</u>

**(a)**     The Defendant's argument is a prod that seeks to embroil this Court in assessing the benefits of the challenged gun control regulations, something this Court is expressly prohibited from doing under Supreme Court jurisprudence.

**(b)**     "Moreover, *Heller* and *McDonald* expressly rejected the…………. application of any 'judge-empowering "interest-balancing inquiry" that "asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effects upon other important governmental interests."' *Heller*, 554 U. S., at 634 (quoting *id.*, at 689–690 (BREYER, J., dissenting)); see also *McDonald*, 561 U. S., at 790–791 (plurality opinion) (the Second Amendment does not permit—let alone require—'judges to assess the costs and benefits of firearms restrictions' under means-end scrutiny). We declined to engage in means-end scrutiny because '[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is *really worth* insisting upon.' *Heller*, 554 U. S., at 634. We then concluded: '<u>A constitutional guarantee subject to future judges'</u> <u>assessments of its usefulness is no constitutional guarantee at all</u>.' *Ibid.*"

**(9)** __Purchase Authorization Form (PAF)__

**(a)   DEFENDANTS:** Our regulation doesn't regulate the __acquisition__ of the guns, and it doesn't regulate the __possession or the carrying__. **Ex 07 - p. 13: 9-11**

**(b)   R&R:** __First, the City's rule places no restrictions on an individual's ability to carry a handgun in public for self-defense. The rule does not regulate the acquisition of a gun.__ Nor does the rule speak to who can obtain a carry license or what must be shown by a person to obtain such a license. __What's more, the rule does not limit the number of handguns that can be carried on a person at one time__ **Ex 03 - p. 11: ¶ 1**

**16.**   38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits the __acquisition__ of more than (2) handguns and the __carrying__ of more than (2) handguns on a person at any time.

**(a)   Justice Thomas:** "We reiterate that the standard for applying the Second Amendment is as follows: __When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct__. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."  He further noted, "__The test that we set forth in__ *Heller* __and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding__."

**17.**   Defendants aver on the record that under step (1) of __*Bruen*__ the __acquisition, possession__, and public __carrying__ of handguns is conduct presumptively protected by the plain text of the 2nd Amendment. How could Knight "__fail to state a claim under the 2nd Amendment__" if __acquiring__ a handgun requires applying for and receiving a state CL  and PAF under 38 - R.C.N.Y. § 5-25 which are Defendant's __rules__? But when challenged 38 - R.C.N.Y. § 5-25 suddenly does not regulate the __acquisition, possession, and carrying__ of handguns although 38 - R.C.N.Y. § 5-25 states in writing "__the following are the rules concerning handgun acquisition__." Thus shifting the burden to Defendants to provide historical analogues under step (2) of __*Bruen*__. **Ex 08**

**(10)** **§ 5-25 Handgun Purchase Authorizations**

**(a)** <u>The licensee may not obtain a handgun without prior written authorization from the Division Head, License Division</u>. This <u>authorization</u> shall be provided in the nature of a "<u>Handgun Purchase Authorization</u>" form. **The following are the rules concerning handgun acquisition:**

**(b)** § 5-25 (d) Number of handguns allowed on a handgun license.

**(c)** (4) The number of handguns allowed under each type of handgun license is listed below. Requests for additional handguns shall be reviewed on an individual basis.

   **i.** **Carry and Special Carry – Two handguns**. <u>The Division Head of the License Division may, in her/his discretion and in accordance with applicable law, limit the number of handguns that appear on the carry handgun license</u>.

**18.** Upon approval of a state CL applicants receive (1) PAF with their license. (1) handgun must be purchased within (30) days. If no handgun is purchased the licensee can request a (10) day extension which requires returning the PAF by hand. If the PAF is not returned within (10) calendar days of expiration the state CL will be suspended or revoked.

**19.** If a handgun is purchased, the licensee must make an appointment to have the handgun inspected by the NYPD LD within (72) hours before the handgun can be <u>carried</u> in public for self-defense. Under 38 - R.C.N.Y. § 5-25 <u>acquiring</u> an additional handgun requires requesting an additional PAF. Only (1) PAF can be requested every (90) days and every request takes (6) additional weeks to process for a total of (134+) days. 38 - R.C.N.Y. § 5-25 regulates the <u>acquisition, possession, and carrying</u> of handguns these rules require historical analogues under step (2) of *Bruen*.

**(a)**   <u>Allow six (6) weeks for processing</u>. You will be notified by mail of the approval or disapproval of your request.

**(b)**   8. Purchase authorizations are issued only from 9 am to 12 noon, monday through thursday - we are closed on all legal holidays.

**(c)**   9. <u>Only one purchase authorization request will be accepted every 3 months</u>. Requests must be submitted separately and will only be accepted after outstanding purchase authorization forms have been returned to this division and processed.

**(d)**   10. <u>You may not take possession of a firearm until after you have received a purchase authorization form</u> (pd 643-053).

**20.**   Defendants limit the 2nd Amendment right to only purchasing (i.e., <u>acquiring</u>) (1) handgun (4) times per year. And provide no lawful reason for their waiting period of (134+) days. Arbitrary waiting periods are a violation of the 2nd Amendment right to <u>acquire and possess</u> handguns to be publicly <u>carried</u> for self-defense. This delay places an undue burden on the 2nd Amendment right to <u>acquire, possess, and carry</u> handguns. How can a constitutional right be subject to this level of regulation? "<u>A right delayed is a right denied</u>." - Martin Luther King, Jr.

**(a)**   Maryland's law fails the new <u>*Bruen*</u> test. As we will explain, Plaintiffs have shown that Maryland's handgun-licensure law regulates a course of conduct protected by the Second Amendment, and Maryland has not established that the law is consistent with our Nation's historical tradition. *See*, <u>*Maryland Shall Issue, Inc. v. Moore*</u>, No. 21-2017 (2023). **Ex 09**

## 5)   <u>*Bruen's*</u>: Text, History & Tradition

**21.**   Step (1) of <u>*Bruen*</u> the plain text of the 2nd Amendment presumptively protects Knight's conduct of <u>acquiring, possessing, and carrying</u> handguns publicly for self-defense. Step (2) of <u>*Bruen*</u> 38 - R.C.N.Y. § 5-25 regulates the <u>acquisition, possession, and carrying</u> of handguns for self-defense. Then a <u>fortiori</u> 38 - R.C.N.Y. in its entirety requires laws analogous to the ratification of the 2nd Amendment. **Ex 10**

**(11)**   <u>**Swapping Handguns is Facially Unconstitutional**</u>

**22.**   Under the 2nd Amendment, a licensee cannot be required to submit a notarized letter to the NYPD LD to request their <u>permission</u> to swap (1) handgun from a state RPL to a state CL while removing (1) handgun from a state CL to add to a state RPL. What other constitutional rights are regulated in this manner?

> **(a)**   **DEFENDANTS:** These regulations just **<u>control</u>** how many you can list on each license. You can have two on a carry, one of which can be carried in public and one of which, obviously, can be used to defend yourself in public. And you can have many on your premise residence, which you can use then to defend yourself in the home. <u>And you can also then, with the PD's permission</u>, switch guns that are listed on your premise from your premise to your carry, and vice versa, if you want as well. **Ex 07 - p. 10: 21-25 | p. 11: 1-5**

**23.**   *Bruen* prohibits discretionary licensing citizens must apply for (2) licenses, request PAFs, and wait (134+) days before they can request <u>permission</u> to purchase another handgun to be publicly <u>carried</u> for self-defense. Submitting notarized letters, and asking the NYPD LD for <u>permission</u> at their <u>discretion</u> to swap handguns from one license to another can take months. While limiting the right to keep and bear arms to only <u>acquiring and possessing</u> no more than (2) handguns on a state CL into <u>perpetuity</u>. The 2nd Amendment is a constitutional right at what time will any of the Defendant's numerous rules and steps be (1) step too many?

> **(a)**   **<u>Justice Thomas:</u>** "<u>Despite the popularity of this two-step approach, it is one step too many</u>. Step one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history.  But *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms."

24.     The right to keep and bear arms in the City of New York is not a right, but a privilege granted through the unconstitutional regulation of that right. What other constitutional rights are regulated requiring permission from a local police department to exercise those rights? Defendants are attempting to circumvent *Bruen* by creating administrative hurdles as if the 2nd Amendment is a second-class right.

(a)     **Justice Thomas:** "The Second Amendment right to bear arms in public for self-defense is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.' We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need."

25.     If Knight or the NYPD LD were to cancel his state RPL it would cause Knight irreparable harm because 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits the transfer of more than (2) handguns from his state RPL to his state CL. Knight would have to voucher his handguns constituting a taking of Knight's personal property (i.e., his handguns) to be confiscated and destroyed by the NYPD LD without just compensation in violation of due process.

26.     Knight cannot remedy this injury by renewing his state RPL because as-applied and facially a state RPL is unconstitutional. As it prohibits Knight's ability to publicly carry handguns in violation of the 2nd Amendment. This case is not about the privileges granted by the state licenses it's about the rights guaranteed by the Constitution. The acquisition, possession, and carrying of handguns are not predicated on a state RPL or state CL. They are pre-existing rights under the 2nd Amendment. The state RPL and state CL cannot supersede the Constitution in violation of the Supremacy Clause.

**(12)** **Gibbons v. Ogden**

**(a)** Under the Supremacy Clause, any state law that conflicts with a federal law is preempted. Conflict arises when it is impossible to comply with both the state and federal regulations or when the state law interposes [(to) put up (between)] an obstacle to the achievement of Congress's discernible objectives. *See*, *Gibbons v. Ogden*, 22 U.S. 1 (1824). **Ex 11**

**(13)** *Bruen*: **Regulations Require 1791 Historical Analogues**

27.   As per *Bruen*, step (1) is based on Knight's conduct, but the regulations are being put before the conduct which always comes first. Knight has <u>acquired, possesses</u>, and can publicly <u>carry</u> handguns for self-defense and intends to <u>acquire, possess, and carry</u> additional handguns in the future. Defendant's regulations strike at the core of the right to keep and bear arms which is conduct that is always presumptively protected by the plain text of the 2nd Amendment.

28.   The NYPD LD is responsible for the application process, screening, and issuing of various types of handgun licenses, as well as rifle and shotgun permits. 38 - R.C.N.Y. regulates the <u>acquisition, possession, and carrying</u> of handguns publicly.

**(a)** **DEFENDANTS**: And our argument is that this is not core Second Amendment conduct, and it doesn't implicate the Second Amendment. **Ex 07 - p. 04: 19-21**

29.   Defendants do not determine if Knight's conduct presumptively falls under the protection of the plain text of the 2nd Amendment. Defendants cannot sever Knight's conduct from the protection of the plain text of the 2nd Amendment by ignoring the U.S. Supreme Court's precedent at step (1) of *Bruen* to avoid failing to meet their burden of proof at step (2). *Bruen* gives no special dispensation to the Defendant's local rules that cannot supersede federal law or the Supremacy Clause.

30.     Step (2) of _Bruen_ requires Defendants to produce analogous laws from the time of the ratification of the 2nd Amendment in 1791 to support their regulations. However, this is a probability of zero [P(E) = 0] and will never occur as there were no handgun licenses in 1791 so by default Defendants have failed to meet their burden.

31.     During the ratification of the 2nd Amendment in 1791 there were no state RPLs or state CLs, no PAFs, or notarized letters to request permission to swap handguns between licenses. Nor were there limits on the number of arms citizens could keep and bear for self-defense in public. The NYPD was established on May 23, 1845, so any rules promulgated by Defendants that inhibit, prohibit, or delay the acquisition, possession, and carrying of arms are subject to step (2) of _Bruen_. Even if a licensing scheme is lawful under _Bruen_ there is no grant of police power to issue an unconstitutional state RPL to keep arms and a separate but not equal state CL to bear arms which as-applied and facially violate the 2nd Amendment.

32.     Under NYS PL § 400.00 all licenses are state CLs before restrictions are placed upon them (i.e., premises, target, hunting, etc). The premise restriction placed upon a state RPL prohibiting the public carrying of handguns for self-defense was held unconstitutional by _Bruen_. How can a state RPL that "confines the right to 'bear' arms to the home nullifying half of the Second Amendment's operative protections" because it is a "restricted type of license" that "effectively prevents law-abiding residents from carrying a gun for [self-defense]" which as-applied and facially violates the 2nd Amendment be held constitutional in a federal court of law?

33.     A state RPL restricts the <u>carrying</u> of handguns in public for self-defense because no citizen can <u>bear</u> any handguns possessed on a state RPL. After the decision in <u>*Bruen*</u> all citizens who satisfied certain threshold requirements could receive a state CL to publicly <u>carry</u> handguns for self-defense. In light of <u>*Bruen*</u> requiring citizens to apply for a state RPL that prohibits the right to keep and <u>bear</u> arms is <u>as-applied and facially</u> unconstitutional. <u>*Bruen*</u> eliminated the state RPL because it prohibits conduct the 2nd Amendment allows publicly <u>carrying</u> handguns for self-defense. The U.S. Supreme Court already held in <u>*Shuttlesworth v. Birmingham*</u> that converting a right into a privilege is unconstitutional.

### (14)   **Shuttlesworth v. Birmingham**

**(a)**   Whereas if a state converts a right into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity." *See*, <u>*Shuttlesworth v. Birmingham*</u>, 394 U.S. 147 (1969). **Ex 12**

## 6)   <u>2nd Amendment Violations</u>

34.     The Defendant's rules prohibit the right to keep and bear arms. An infringement of the 2nd Amendment does not require the complete prohibition on publicly <u>carrying</u> arms to violate the 2nd Amendment. Defendants would aver that once a citizen has been <u>allowed</u> to <u>acquire, possess, and carry</u> (2) handguns on a state CL. They have already been <u>granted permission</u> and <u>allowed</u> to exercise their 2nd Amendment right and the <u>acquisition</u> of additional handguns is now conduct that is no longer presumptively protected by the plain text of the 2nd Amendment. However, the 2nd Amendment clearly states, "<u>the right of the people to keep and bear Arms, shall not be infringed.</u>" Limiting <u>possession</u> to (2) arms is an <u>infringement</u> of the right.

**(a)**    Requiring a fee for a license to exercise a constitutional right.

**(b)**    Requesting a PAF that takes (6) weeks to process is a delay that places an undue burden on the exercise of the constitutional right.

**(c)**    Requiring a (90) day waiting period between each PAF request + (6) weeks to process for a delay of (134+) days places an undue burden on the exercise of the constitutional right.

**(d)**    A state RPL which is "<u>a restricted type of license that effectively prevents law-abiding residents from carrying a gun for [self-defense]</u>" <u>as-applied and facially</u> prohibits exercising the constitutional right.

**(e)**    Requiring a state CL that limits the <u>*acquisition, possession, and carrying*</u> to only (2) handguns and prohibits the <u>*possession*</u> of more than (2) handguns is a prohibition on exercising the constitutional right.

**(f)**    Requiring a notarized letter to request permission to swap (1) handgun from a state RPL to add it to a state CL is a prohibition on exercising the constitutional right.

**(g)**    Article VI, Paragraph 2 of the U.S. Constitution is commonly referred to as the Supremacy Clause. It establishes that the federal constitution, and federal law generally, take precedence over state laws, and even state constitutions.

**(15)**    <u>**Koons v. Platkin**</u>

**(a)**    In conclusion, the Second Amendment's "right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" <u>Bruen</u>, 142 S. Ct. at 2156 (quoting <u>McDonald</u>, 561 U.S. at 780). That does not mean, however, that the right is "unlimited." <u>Heller</u>, 554 U.S. at 626. The Constitution leaves the States "some measures" to combat handgun violence. <u>Id</u>. at 636. But what the Second Amendment prohibits the States from doing, and what the State of New Jersey has done here with much of Chapter 131, is to "prevent[] law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms." <u>Bruen</u>, 142 S. Ct. at 2156. That is plainly unconstitutional.

**(b)**    <u>Bruen</u> required the State to bring its firearm laws in compliance with the Second Amendment. Chapter 131 was the State's response, but it went too far, becoming the kind of law that Founding Father Thomas Jefferson would have warned against since it "disarm[s] only those who are not inclined or determined to commit crimes [and] worsen[s] the plight of the assaulted, but improve[s] those of the assailants." <u>Koons v. Platkin</u>, Civil No. 22-7464 (2023). **Ex 13**

**(16)**   <u>**Srour v. New York City. et al**</u>

**(a)**   For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment. Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional. And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality. *See*, <u>*Srour v. New York City*</u>, et al, 22-cv-00003 (S.D. N.Y. 2023). **Ex 14**

**(17)**   <u>**Schneider v. State**</u>

**(a)**   It is suggested that the Los Angeles and Worcester ordinances are valid because their operation is limited to streets and alleys, and leaves persons free to distribute printed matter in other public places. But, as we have said, the streets are natural and proper places for the dissemination of information and opinion, and <u>one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place</u>. *See*, <u>*Schneider v. State*</u>, 308 U.S. 147 (1939). **Ex 15**

## 7)   <u>**CONCLUSION**</u>

**35.**   If the R&R is adopted this court would be ruling in part that no historical analogues are required for regulations that <u>as-applied and facially</u> violate the 2nd Amendment rights of all citizens by allowing the Defendants to issue a state CL that prohibits the <u>acquisition, possession, and carrying</u> of more than (2) handguns. And issuing state RPLs that are "<u>a restricted type of license that effectively prevents law-abiding residents from carrying a gun for [self-defense]</u>" in contravention of the decision in <u>*Bruen*</u>. Defendants cannot issue a state RPL that prohibits what the Constitution allows citizens <u>carrying</u> handguns publicly for self-defense.

**36.**    This R&R reinforces decades of systemic violations of the 2nd Amendment right to publicly <u>carry</u> handguns for self-defense by the NYPD LD. Allowing them to continue to promulgate regulations that <u>as-applied and facially</u> violate the 2nd Amendment. **Ex 16**

**37.**    Under step (1) of <u>***Bruen***</u> Knight's conduct is presumptively protected by the plain text of the 2nd Amendment. At step (2) Defendants must present historical analogues from the time of the ratification of the 2nd Amendment in 1791. Defendants have failed to meet their burden. Defendants cannot ignore <u>***Bruen's***</u> precedent at step (1) to avoid failing to meet their burden of proof at step (2) of <u>***Bruen***</u>.

### (18)   <u>Conference Transcript - November 09, 2023</u>

**(a)**    **COURT:** "But what I really wanted to address was Mr. Knight's Second Amendment claim as it pertains to what I understand him to be challenging, which is the number of handguns he can have on a carry license. And I understand the City, in their motion papers -- in their motion to dismiss, indicates that the City regulation at issue here, 38 RCNY 5-25(d)(4)(i), doesn't violate the Second Amendment. <u>But I wanted to talk through that a bit, because my understanding of the landscape</u> **post *Bruen* is that there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is**<u>. And my understanding of the test following *Bruen* is that it would be the government's burden to identify a historical analogue that would be, not the twin of whatever the city regulation, but something analogous to that dates back, you know, a regulation from the time of the founding or sometime near then. But it struck me from the briefing, from the City's motion, that it almost was pointing to Knight, and it seemed to shift the burden on him to explain why the regulation was somehow infringing his rights.</u>"

**(b)**    "And so, you know, we spent some time looking at cases to see if there was anything, like, factually similar, and we didn't find anything." **Ex 07 - p. 2: 19-25 | p. 3: 1-20**

38.     If Knight's conduct was not covered by the plain text of the 2nd Amendment why would this court look for factually similar cases? This court already averred on the record "that there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is." So how is it possible that if "there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is" and nothing within Knight's proposed course of conduct to acquire, possess, and carry handguns publicly for self-defense has changed since the inception of this case? Why did this court reverse itself in the R&R?

39.     Knight intends to cancel his state RPL because it is a "restricted type of license" that "confines the right to 'bear' arms to the home nullifying half of the 2nd Amendment's operative protections" and "effectively prevents law-abiding residents from carrying a gun for [self-defense]" which as-applied and facially violates the 2nd Amendment. Knight intends to transfer all (4) of his handguns to his state CL but 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits Knight from transferring more than (2) handguns to his state CL. 38 - R.C.N.Y. § 5-25 (d)(4)(i) only allows for the acquisition, possession, and carrying of no more than a total of (2) handguns into perpetuity.

40.     Because 38 - R.C.N.Y. § 5-25 (d)(4)(i) prohibits Knight's conduct of acquiring, possessing, and publicly carrying handguns for self-defense which is conduct presumptively protected by the plain text of the 2nd Amendment. This court averred on the record that "there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is."

41.     However, within the R&R, this court averred that Knight's conduct of <u>acquiring, possessing</u>, and publicly <u>carrying</u> handguns for self-defense is not conduct presumptively protected by the plain text of the 2nd Amendment therefore Knight "<u>failed to state a claim under the 2nd Amendment</u>." If Knight's conduct of <u>acquiring, possessing</u>, and publicly <u>carrying</u> handguns for self-defense is not protected by the plain text of the 2nd Amendment. This would apply to all citizens in the State of New York with a state RPL or state CL and technically render the decision in *Bruen* moot.

42.     If "<u>there really is no dispute here that the conduct he's challenging would be at the core of what the Second Amendment protection is</u>" and this court already acknowledged that Defendants attempted to shift the burden to Knight. Why does the R&R conflict with the transcript whereas this court now reverses itself and shifts the burden from Defendants to Knight by disregarding step (1) of *Bruen* and allowing the Defendants to avoid meeting their burden of proof at step (2) of *Bruen*?

   (a)    **COURT:** But it struck me from the briefing, from the City's motion, that it almost was pointing to Knight, and it seemed to shift the burden on him to explain why the regulation was somehow infringing his rights. **Ex 07 - p. 3: 13-17**

43.     Defendants are splitting the 2nd Amendment right into (2) separate rights. (1) A state RPL to <u>keep arms</u> and (2) a separate but not equal state CL to <u>bear arms</u> which is <u>as-applied and facially</u> unconstitutional. If Knight's <u>acquisition, possession</u>, and public <u>carrying</u> of handguns is not conduct presumptively protected by the plain text of the 2nd Amendment? What conduct would Knight need to engage in that would be considered conduct presumptively protected by the plain text of the 2nd Amendment within this U.S. District Court in the Southern District of New York?

**(a)** **Justice Thomas**: We have little difficulty concluding that it does. <u>Nothing in the Second Amendment's text draws a home/public distinction with respect to the right to keep and bear arms</u>. As we explained in <u>*Heller*</u>, the "textual elements" of the Second Amendment's operative clause— "the right of the people to keep and bear Arms, shall not be infringed"—"guarantee the individual right to possess and carry weapons in case of confrontation."

**(b)** This definition of "bear" naturally encompasses public carry. Most gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table. Although individuals often "keep" firearms in their home, at the ready for self-defense, most do not "bear" (i.e., carry) them in the home beyond moments of actual confrontation. <u>To confine the right to "bear" arms to the home would nullify half of the Second Amendment's operative protections</u>.

## (19) **Murdock v. Pennsylvania**

**(a)** "No state shall convert a liberty into a license, and charge a fee, therefore." *See*, <u>*Murdock v. Pennsylvania*</u>, 319 U.S. 105 (1943).

## (20) **Shuttlesworth v. Birmingham**

**(a)** Whereas if a state converts a right into a privilege, the citizen can ignore the license and fee and engage in the right (liberty) with impunity." *See*, <u>*Shuttlesworth v. Birmingham*</u>, 394 U.S. 147 (1969).

## (21) **Text First, Historical Analogue Laws Second**

**(a)** Important lesson about how the anti-gunners and the state governments are seeking to alter the Text First, History Second approach to applying the 2nd Amendment. See, Mark Smith (Link): **[Look at the Text First, Historical Analogue Laws Second](#)**

## (22) **How to Apply Supreme Court's Bruen Methodology**

**(a)** These videos explain in detail how lawyers and judges should apply the 2nd Amendment to legal matters, and discuss the proper understanding of the <u>*NYSRPA v. Bruen*</u> methodology in resolving 2A challenges. Designed to help professionals and judges get it right without getting confused or side-tracked by erroneous or flawed legal arguments or theories. See, Mark Smith (Links):

**(b)** Part I: **[How to Apply SCOTUS Bruen Methodology (Part I)](#)**

**(c)** Part II: **[How to Apply SCOTUS Bruen Methodology (Part II)](#)**

44.     The R&R would appear to be erroneous or contrary to the law and should be REJECTED for further proceedings consistent with the precedent set in _Bruen_. Thank you for your kind consideration in this urgent matter.

Dated:      December 18, 2023                    Respectfully submitted,
            New York, New York


                                                  **/s/ Cavalier D. Knight**
                                                  Cavalier D. Knight
                                                  Managing Member
                                                  Cavalier Knight LLC
                                                  511 W 165th St # 627
                                                  New York, NY 10032-0634
                                                  +1 (646) 580-7801
                                                  info@cavalierknight.com