UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

CAVALIER D. KNIGHT,

                                        Plaintiff,

                    -against-

CITY OF NEW YORK; KEECHANT SEWELL,

                                        Defendants.
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 11/20/2023

22-CV-10755 (VEC)(VF)

**REPORT AND
RECOMMENDATION**

**VALERIE FIGUEREDO, United States Magistrate Judge**
**TO: THE HONORABLE VALERIE E. CAPRONI, United States District Judge**

On December 20, 2022, Plaintiff Cavalier D. Knight ("Knight") commenced this action

against Defendants The City of New York and Keechant Sewell, the then-Commissioner of the

New York City Police Department[1] (collectively, "Defendants"), claiming that 38 RCNY § 5-

25(d)(4)(i)[2], which limits to two the number of handguns that can appear on a carry handgun

license, violates the Second Amendment of the United States Constitution, the New York State

Civil Rights Law § 4, and is preempted by New York Penal Law § 400.00. See ECF No. 1

("Compl.") at ¶¶ 23, 27, 34, 37-38, 53-54. Knight also appears to be asserting a claim under the

Takings Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of

---

[1] Knight sued Sewell, the then-Commissioner of the New York City Police Department
("NYPD"), in her official capacity. On July 17, 2023, Edward Caban replaced Sewell as
Commissioner of the NYPD, and is therefore substituted as the named defendant. See Fed. R.
Civ. P. 25(d) (permitting automatic substitution of a party who is a public official sued in his
official capacity when the public official "ceases to hold office" while a suit is pending).

[2] Knight's Complaint cites to "38 RCNY § 5-25(d)(i)," see, e.g., Compl. at ¶ 17, but that
specific statutory subsection does not exist. Defendants point out that the relevant provision
Knight challenges is 38 RCNY § 5-25(d)(4)(i), see ECF No. 24, at n.1, and Knight does not
contend otherwise.

the Fourteenth Amendment based on the potential that his handguns will be confiscated given the

expiration of his residence premise license. Compl. ¶¶ 3, 13, 29-30, 43, 45, 49, 51. On April 7,

2023, Defendants moved to dismiss the Complaint. See ECF Nos. 22-24. For the reasons that

follow, I respectfully recommend that Defendants' motion be **GRANTED**.

<u>BACKGROUND</u>

### A.  Factual Background[3]

Knight, a New York City resident, has had a Residence Premises License ("RPL") since

2010. See Compl. at ¶¶ 1, 5. Knight's RPL was issued by the License Division of the NYPD and

was scheduled to expire on December 26, 2022.[4] Id. at ¶¶ 1, 43. The License Division has

approved four handguns on Knight's RPL. Id., Ex. 2 at 5. On September 14, 2022, Knight sent

an e-mail to Nicole Berkovich of the License Division "to inquire as to why he would need to

pay to renew his state RPL after receiving his state [carry license]." Id. at ¶ 28. Although Knight

initiated a renewal application for his RPL, he has not paid the fee for that application. See id. at

¶ 28. On December 6, 2022, Knight's "state [carry license] was approved but [had] not been

issued."[5] Id. at ¶ 3.

---

[3] The factual allegations recounted herein are taken from the Complaint. For purposes of considering Defendants' motion to dismiss, I accept as true all well-pled factual allegations in Knight's Complaint and draw all reasonable inferences in Knight's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

[4] A RPL permits a licensee to have a handgun that is "safeguarded at the specific address indicated on the license. See 38 RCNY § 5-01(a).

[5] Defendants indicate that Knight's license to carry a concealed handgun was issued "[o]n or about March 22, 2023." See ECF No. 24 at 2. At a conference on November 13, 2023, Knight confirmed that he had received a carry license. See ECF No. 37 at 30. A carry license permits the licensee to carry concealed handgun on his person. See 38 RCNY § 5-01(b).

**B. Procedural Background**

Knight commenced this action on December 20, 2022. See ECF No. 1. Knight claims that 38 RCNY § 5-25(d)(4)(i), which requires that only two handguns be listed on a carry license, violates the Second Amendment, the Takings Clause of the Fifth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the New York State Civil Rights Law § 4. See Compl. at ¶¶ 53-54. Knight also alleges that the City rule has been preempted by Penal Law § 400.00. Id. at ¶¶ 37-38.

On December 21, 2022, Knight filed a motion for a temporary restraining order and preliminary injunction to prevent the City from requiring him to surrender his handguns, because his RPL was to expire on December 26, 2022. See ECF No. 8 at ¶¶ 1, 8. In his motion, Knight stated that he had no intention to pay the fee necessary to renew his RPL pending the Court's determination of the motion. Id. at ¶ 9.

I held a conference to address the motion on March 16, 2023. See ECF No. 25 ("3/16/23 Tr."). During the conference, Knight indicated that he had received his carry license on December 30, 2022, and still had his RPL, despite its expiration, because he had submitted a timely renewal application. See 3/16/23 Tr. at 4-5. Knight explained that he owns four handguns, two listed on the carry license permit and two under the RPL. Id. at 5. Knight further explained that if his RPL is not renewed, the two firearms associated with that license will be "vouchered to the NYPD." Id. at 5-6. Knight confirmed that if he paid the fee for the renewal application for his RPL, he would not have his handguns taken away. Id. at 4-5. Because Knight still had his handguns and his RPL would not be revoked if he paid the application fee, I explained to Knight that he had not shown irreparable harm, as is necessary for a temporary restraining order. Id. at

6-7, 9. I subsequently issued a Report & Recommendation, recommending that Knight's motion for a TRO and preliminary injunction be denied. See ECF No. 32.

On April 7, 2023, Defendants moved to dismiss Knight's Complaint in its entirety. See ECF Nos. 22-24. On April 21, 2023, Knight filed an opposition to Defendants' motion to dismiss. ECF No. 27.[6] On April 28, 2023, Defendants filed a reply in support of their motion to dismiss. ECF No. 28. On November 9, 2023, the Court held oral argument on Defendants' motion. See ECF No. 37 ("11/13/23 Tr.").

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of New York, 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322, 324 (2007). However, a court does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. The court's function on a motion to dismiss is "not to weigh the

---

[6] Although the text for the Docket Entry at ECF No. 27 describes the filing as a "First Letter Motion for Leave to File Letter Motion," the substance of document confirms that it is not a separate motion but, rather, Knight's opposition to Defendants' motion to dismiss.

4

evidence that might be presented at a trial but merely to determine whether the complaint itself is

legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

## DISCUSSION

### A.  Knight lacks standing to assert his Fifth and Fourteenth Amendment claims.

Under Article III of the United States Constitution, the jurisdiction of the federal courts is

limited to "Cases" and "Controversies." Hedges v. Obama, 724 F.3d 170, 188 (2d Cir. 2013).

One aspect of that limitation is the requirement that a plaintiff have standing to sue. Clapper v.

Amnesty Int'l USA, 568 U.S. 398, 408 (2013). The doctrine of standing requires that a plaintiff

in federal court have "a personal stake in the outcome of the controversy." Summers v. Earth

Island Inst., 555 U.S. 488, 493 (2009) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

To establish standing, a plaintiff must satisfy three elements: the plaintiff must have (1)

suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not

conjectural or hypothetical, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision. Spokeo, Inc. v. Robins, 578

U.S. 330, 338 (2016). The Second Circuit has explained that "'threatened injury must be

*certainly impending* to constitute injury in fact,'" and "'[a]llegations of *possible* future injury'

are not sufficient." ACLU v. Clapper, 785 F.3d 787, 800 (2d Cir. 2015) (quoting Clapper v.

Amnesty Int'l, 568 U.S. 398, 409 (2013) (emphasis and alteration in original)). As the party

invoking the Court's jurisdiction, Knight bears the burden of establishing all three elements

necessary for standing. Hedges, 724 F.3d at 188.

Knight appears to be basing his Fifth and Fourteenth Amendment claims on the

possibility that the NYPD will confiscate his handguns. See Compl. at ¶¶ 3, 13, 28, 30, 43, 49.

But that injury has not materialized. As recently as November 13, 2023, Knight still had his

handguns. See 11/13/23 Tr. at 29-30. And, Knight's RPL remains valid, as Defendants and Knight have both indicated. See Defendant's Reply, ECF No. 28 at 3; 11/13/23 Tr. at 29. Moreover, Knight acknowledged that his RPL would be renewed by the City if he were to pay the application fee. See 3/16/23 Tr. at 4-6; 11/13/23 Tr. at 29. Additionally, if Knight wanted to own more than the four handguns he currently owns, the License Division is required to approve a request to add handguns to a RPL so long as Knight is able to demonstrate proper safeguarding and compliance with the mandatory waiting period. See 38 RCNY § 5-25(d)(4)(vi).

In other words, even though Knight's due process, equal protection, and takings clause claims are premised on the possibility that the City will take away his handguns for violating 38 RCNY § 5-25(d)(4)(i), Knight has not shown that he has suffered such an injury or that such a threatened injury is imminent. Harty v. West Point Realty, Inc., 28 F.4th 435, 443 (S.D.N.Y. 2022) (holding that plaintiff had not suffered injury in fact for standing where plaintiff had not used the allegedly non-ADA-compliant website to arrange future travel and thus had not alleged that his ability to travel was harmed in a concrete way). Nor has Knight shown that he has suffered or will imminently suffer an injury. To the contrary, it appears that Knight's RPL renewal application would be approved if he simply paid the processing fee. Knight therefore has not pled that he has suffered an injury-in-fact, which is an "indispensable requirement for standing." Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 174 (2d Cir. 2005).

Relatedly, Knight's allegations are insufficient to establish that his claims are ripe for judicial review. The doctrine of ripeness contains two requirements—constitutional ripeness and prudential ripeness. Simmonds v. Immigr. & Naturalization Serv., 326 F.3d 351, 356-57 (2d Cir. 2003). Constitutional ripeness "prevents a federal court from entangling itself in abstract

6

disagreements over matters that are premature for review because the injury is merely speculative and may never occur." In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig., 725 F.3d 65, 110 (2d Cir. 2013) (quoting Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 226 (2d Cir. 2008)). For a claim to satisfy the requirement of constitutional ripeness, the plaintiff's injury must be "imminent rather than conjectural or hypothetical." Id. Prudential ripeness looks at whether the claim "is fit for judicial resolution" and "whether and to what extent the parties will endure hardship if decision is withheld." Simmonds, 326 F.3d at 359.

Here, Knight's RPL has not been revoked and his renewal application would be approved if he paid the necessary fee. Additionally, Knight has not had his handguns confiscated and nor is there any indication that Knight would not be permitted to add additional handguns to his RPL. In short, any claim premised on the denial of the license or confiscation of the handguns is speculative as neither injury has occurred and may never occur. See United States v. Broadcast Music, Inc., 275 F.3d 168, 178-79 (2d Cir. 2001) (holding that the case was not ripe for adjudication because "the threat of an injury [was] speculative"). Knight's claims are thus not ripe for judicial intervention.

Knight also appears to be asserting third-party standing to sue on behalf of "all law-abiding citizens." See Compl. at ¶¶ 33-34, 46-47. However, third-party standing still requires a plaintiff to "meet[ ] 'the constitutional prerequisites of standing,'" such as injury-in-fact. Mid–Hudson Catskill Rural Migrant Ministry, Inc., 418 F.3d at 174 (quoting Lewis v. Thompson, 252 F.3d 567, 584 (2d Cir. 2001)). As already discussed, Knight has not pled that he suffered an injury-in-fact.

Nevertheless, even if Knight had sufficiently alleged an injury-in-fact, he still would be unable to satisfy the requirements of third-party standing. In addition to the constitutional

prerequisites of standing, third-party standing requires the plaintiff to "satisfy 'prudential limitations,' such as "(1) a 'close relation with the third party' and (2) 'some hindrance to the third party's ability to protect his or her own interests.'" Lewis, 252 F.3d at 584 (quoting Lake v. Reno, 226 F.3d 141, 146 (2d Cir. 2000)). Because Knight is alleging third-party standing on behalf of "all law-abiding citizens" (Compl. at ¶¶ 33-34), it is plain that he will be unable to show a "close relation" with those third parties, as is necessary for Knight to have prudential standing to sue on their behalf. Cf. Lewis, 252 F.3d at 585 (finding first element of prudential standing satisfied where plaintiffs were citizen children and third parties were the children's alien mothers).

In short, I recommend that Defendants' motion to dismiss Knight's Fifth and Fourteenth Amendment claims be granted because Knight lacks standing to bring those claims.

**B. Knight fails to state a claim under the Second Amendment and New York State's Civil Rights Law § 4.**

Knight contends that 38 RCNY § 5-25(d)(4)(i) violates the Second Amendment of the United States Constitution and the New York State Civil Rights Law § 4.[7] See Compl. Fifth Cause of Action. Knight alleges that the city regulation restricts and substantially burdens an individual's right to keep and bear arms and is thus unconstitutional on its face and as applied to Knight and other law-abiding citizens. Id. ¶¶ 53-55. As explained below, Knight has not pled a plausible violation of federal or state law.

---

[7] New York's Civil Rights Law § 4 provides that "[a] well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms cannot be infringed." State courts interpret Civil Rights Law § 4 consistent "with federal Second Amendment jurisprudence." See, e.g., Haverstraw Town Police v. C.G., 79 Misc. 3d 1005, 1010 (N.Y. Sup. Ct. Apr. 20, 2023).

In Heller v. District of Columbia, 554 U.S. 570 (2008), the United States Supreme Court held that the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." Id. at 592. Following Heller, courts applied a "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." New York State & Rifle Assoc., Inc. v. Bruen, 597 U.S. --- , 142 S. Ct. 2111, 2125 (2022). The first step of the analysis involves ascertaining whether a particular gun regulation implicates conduct protected by "the original scope of the right based on its historical meaning," because if it does not, "then the analysis can stop there; the regulated activity is categorically unprotected." Id. at 2126. At the second step, a court examines "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." Id. The Court in Bruen confirmed that step one of the analysis "is broadly consistent with Heller." Id. at 2127. But it eliminated step two of the analysis, explaining that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and the government must therefore "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2129-30.

Heller and Bruen make clear, however, that the right to keep and bear arms is "not unlimited." 554 U.S. at 595. "[T]he right to keep and bear arms is 'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" McDonald v. City of Chicago, 561 U.S. 742, 786 (2010); see also Heller, 554 U.S. at 626 (explaining that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). Indeed, although the Court in Bruen struck down New York's "may issue" firearms-permitting regime, which required citizens to show a "special need" for self-defense and submit to a discretionary licensing process in order to exercise their Second

Amendment right to carry arms, the Court nonetheless emphasized that "nothing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit." Bruen, 142 S. Ct. at 2138 n.9; see also id. at 2161 (Kavanaugh, J., concurring) ("The Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense [and] [i]n particular . . . does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 States.").

Knight has not pled a claim that 38 RCNY § 5-25(d)(4)(i) violates the Second Amendment. As discussed, at the first step of the analysis, a court must examine whether the conduct is protected by the Second Amendment, because if the "Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Bruen, 142 S. Ct. at 2126. The question thus becomes whether the conduct at issue in 38 RCNY § 5-25(d)(4)(i) is covered by the text of the Second Amendment. It is not.

The Second Amendment states that "the right of the people to keep and bear Arms[ ] shall not be infringed." U.S. Const. amend. II. At the core of the Second Amendment is an individual's right to possess weapons in the home and in public for self-defense. Bruen, 142 S. Ct. at 2134-35 (concluding that the Second Amendment's plain text guarantees the right of an individual to bear arms in public for self-defense); Heller, 554 U.S. at 584 (explaining that the right to "bear arms" means the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person") (alteration in original). The City's regulation does not restrict who may keep or bear firearms, whether inside the home or in public.

10

First, the City's rule places no restrictions on an individual's ability to carry a handgun in public for self-defense. The rule does not regulate the acquisition of a gun. Nor does the rule speak to who can obtain a carry license or what must be shown by a person to obtain such a license. What's more, the rule does not limit the number of handguns that can be carried on a person at one time.[8] And, Knight himself has a carry license. See ECF No. 23-1 (photographs of Knight's carry license). Second, the rule does not concern possession of a handgun in the home. It therefore places no restrictions on a person's ability to possess a gun in the home for self-defense. All the challenged rule does is limit how many handguns can be listed on a carry license.[9] Under the rule, a licensee may list only two handguns at a time on a carry license. See 38 RCNY § 5-25(d)(4)(i). Consequently, the City's regulation concerns neither the possession of a firearm in the home or in public for self-defense—the core conduct protected by the Second Amendment. See Bruen, 142 S. Ct. at 2125 (explaining that Heller and McDonald held that the Second Amendment protects an individual right to keep and bear arms for self-defense).

Although Knight argues that the complained-of regulation pertains to the acquisition and possession of a firearm (11/13/23 Tr. at 16, 20, 49-51), if it does, it is at most indirectly and, more significantly, without restricting who may obtain a license to carry in public. Bruen makes clear that some burdens on core conduct are permissible, such as those imposed by "shall issue" licensing regimes. See 142 S. Ct. at 2138 n.9 (explaining that "nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes" which

---

[8] A different rule, 38 RCNY § 5-22(a)(7), restricts a licensee to carrying only one handgun at a time on their person.

[9] Although a licensee can list only two handguns at a time on his carry license, it can be any two handguns the licensee picks. As Knight explained at oral argument, a licensee can change which of his handguns is listed on the carry license. The process is not "strenuous" and requires only that a gun owner submit a notarized letter to the NYPD asking for a "swap" of one gun for another. See 11/13/23 Tr. at 44.

"require applicants to undergo a background check or pass a firearms safety course"); see also id. at 2161 ("The Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense."). At bottom, Knight is opposed to 38 RCNY § 5-25(d)(4)(i) because it forces a gun owner to obtain more than one license to possess more than two handguns, because only two handguns can be listed on the carry license.[10] See 11/13/23 Tr. at 15-17, 19. Although Knight contends that there is no "need for two licenses" (see 11/13/23 Tr. at 19-20, 36-39, 46-47, 54-55), nothing in Bruen, Heller, or McDonald prevent the City from requiring gun owners to obtain multiple licenses, one for the home and one to carry in public, so long as the licensing regime does not allow for the denial of a license "based on a perceived lack of need or suitability." Bruen, 142 S. Ct. at 2123. And, here, the challenged rule does not even impose a license requirement or pertain to the requirements for issuance of a carry or residence license.

In sum, the challenged rule does not operate to prevent anyone from keeping or bearing arms. 38 RCNY § 5-25(d)(4)(i) therefore does not violate the Second Amendment because it does not infringe on the core conduct protected by the Second Amendment. And because the Second Amendment and New York's Civil Rights Law § 4 are interpreted consistently, Knight also has not pled a violation of the state law.

## C. The City's Licensing Regulation is not preempted by Penal Law § 400.00.

In his Complaint, Knight contends that 38 RCNY § 5-25(d)(4)(i) is preempted by Penal Law § 400.00, a "comprehensive and detailed regulatory" scheme that evinces an intent by the New York Legislature to preempt local laws that regulate firearms. Compl. at ¶¶ 36-38. Knight is mistaken.

---

[10] To possess more than two handguns, a person would need a RPL, which allows you to keep handguns in the home. See 38 RCNY §§ 5-02, 5-25(d)(4)(vi).

Preemption "embodies the untrammeled primacy of the Legislature to act . . . with respect to matters of State concern." Ass'n of Home Appliance Mfrs. v. City of New York, 36 F. Supp. 3d 366, 375 (S.D.N.Y. 2014) (quoting Albany Area Builders Ass'n v. Town of Guilderland, 74 N.Y.2d 372, 377 (1989)). "The New York Court of Appeals has explained that a local law is preempted 'where there is a direct conflict with a state statute (conflict preemption)' or where the local law is inconsistent with state law because it 'prohibit[s] what would be permissible under State law, or impose[s] prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State's general laws.'" New York Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 93 (2nd Cir. 2017) (quoting Eric M. Berman, P.C. v. City of New York, 25 N.Y.3d 684, 690 (2015)).

In Penal Law § 400.00, the Legislature created a licensing regime for the possession of "firearms" in New York, making it unlawful to possess a handgun in the state without a license. See Juzumas v. Nassau Cty., 33 F.4th 681, 683-84 (2d Cir. 2022). The eligibility requirements for a license are governed by Penal Law § 400.00(1). However, the Legislature recognized the uniqueness of New York City, allowing the City to develop its own application and license for firearms, issue special permits for licensees seeking to carry in the City, and setting its own licensing fee. See Penal Law §§ 400.00(3)(a), (6), (7), (14). Further, Penal Law § 400.30, which was added by the Legislature in 2022, and became effective September 1, 2022, states that "[n]othing in this article shall be construed to impair or in any way prevent the enactment or application of any local law, code, ordinance, rule or regulation that is more restrictive than any requirement set forth in or established by this article." There is no indication in the text of Penal Law § 400.00 to indicate that the Legislature intended to preempt New York City's licensing regulations. Moreover, given the broad language in Penal Law § 400.30, it appears evident that

13

the Legislature intended to allow the City's licensing regulations, even if more restrictive than those imposed in Penal Law § 400.00.

Finally, Knight's memorandum of law in opposition to Defendants' motion to dismiss raises an argument that the City's rule violates the Privileges and Immunities Clause of the United States Constitution. See ECF No. 27 at 7. Knight does not raise this claim in his Complaint. Instead, Knight raised this claim for the first time in his memorandum in opposition to Defendants' motion. Because Knight did not plead this claim in his Complaint, it should not be considered here. See Cooper v. Slice Technologies, Inc., 17-CV-7102 (JPO), 2018 WL 2727888, at *5 n.3 (S.D.N.Y. June 6, 2018) ("The Court will not consider [a] cause of action raised for the first time in opposition to the motion to dismiss"); see also O'Brien v. Nat'l Prop. Analysts Partners, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."); U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co., 12-CV-6811 (CM) (JCF), 2013 WL 791462, at *2 (S.D.N.Y. March 5, 2013) ("If the plaintiff wishes to add new claims, theories, or allegations to its pleadings, the proper course is to seek leave of the Court to do so.").

## CONCLUSION

For the reasons set forth above, I recommend that Defendants' motion to dismiss be

**GRANTED**. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 22

and 27.

   **SO ORDERED.**

DATED:   New York, New York
         November 20, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge


## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Valerie E. Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).**